UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LATANYA CRAMER, | CASE NO.   1:08-cv-00375-AWI-MJS (PC) |
| Plaintiff, | ORDER DISMISSING PLAINTIFF'S SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM |
| v. | |
| S. DICKINSON, et al., | (ECF No. 23) |
| Defendants. | THIRD AMENDED COMPLAINT DUE WITHIN THIRTY DAYS |

### SCREENING ORDER

**I.    PROCEDURAL HISTORY**

Plaintiff LaTanya Cramer ("Plaintiff") is a former state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff filed this action on March 17, 2008. (ECF No. 1.) The Court dismissed Plaintiff's original Complaint for failure to state a claim and allowed Plaintiff to amend. (ECF No. 17.) On June 26, 2009, Plaintiff filed her First Amended Complaint. (ECF No. 18.) The Court recommended in its Findings and Recommendation that the First Amended

1

Complaint be dismissed with prejudice for failure to state a claim. (ECF No. 20.) However, after Plaintiff filed Objections, the Findings and Recommendations were vacated and the Court granted Plaintiff leave to amend her complaint again. (ECF Nos. 21, 22, & 25.) On March 22, 2010, Plaintiff filed a Second Amended Complaint, which is now before the Court for screening.

For the reasons set forth below, the Court finds that Plaintiff's Second Amended Complaint fails to state a claim upon which relief may be granted.

## II.   SCREENING REQUIREMENTS

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its

face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  Iqbal, 129 S.Ct. at 1949.

### III. SUMMARY OF COMPLAINT

Although not specified by Plaintiff, it appears that she is alleging violations of her Fourth and Eighth Amendment rights.  Plaintiff names the following individuals as Defendants: S. Dickinson, C/O; J. Dickinson, Sergeant; and Patricia A. Johnson, P.N. The events complained of occurred at Valley State Prison for Women.

Plaintiff alleges the following: On December 18, 2005, Plaintiff's roommate was robbed. The robbery was reported to Defendant S. Dickinson who worked in the building where Plaintiff was housed.  On December 19, Defendant S. Dickinson retaliated against Plaintiff by claiming Plaintiff had drugs.  Plaintiff was then taken to an inmate restroom and strip searched.  Nothing was found.

Defendant J. Dickinson was then called in.  Plaintiff was handcuffed and taken to a Lieutenant's office for questioning.  The Lieutenant told J. Dickinson to take Plaintiff to be x-rayed, which she volunteered to do.  Plaintiff was "roughed up" a couple of times.

At the prison hospital, instead of being taken to x-ray, Plaintiff was taken to an exam room. J. Dickinson left while S. Dickinson remained with Defendant Johnson.  S. Dickinson whispered something in Johnson's ear.  Then, S. Dickinson and Johnson bent Plaintiff over, pulled her pants down, and Johnson inserted her finger into Plaintiff's rectum.

Plaintiff seeks money damages.

### IV. ANALYSIS

The Civil Rights Act under which this action was filed provides:

3

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted).

### A.    Fourth Amendment Claims

Plaintiff appears to be alleging a violation of her Fourth Amendment right to be free from unreasonable searches.

The Fourth Amendment protects prisoners from unreasonable searches, including the invasion of bodily privacy. Bull v. City and County of San Francisco, 595 F.3d 964, 974-75 (9th Cir. 2010); Michenfelder v. Sumner, 860 F.2d 328, 332-33 (9th Cir. 1988). The Fourth Amendment prohibits unreasonable searches, and reasonableness is determined by the context, which requires a balancing of the need for the particular search against the invasion of personal rights that search entails. Bell v. Wolfish, 441 U.S. 520, 558-59 (1979) (quotations omitted); Bull, 595 F.3d at 971-72; Nunez v. Duncan, 591 F.3d 1217, 1227 (9th Cir. 2010); Michenfelder, 860 F.2d at 332. The scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted must be considered. Bell, 441 U.S. at 559 (quotations omitted); Bull, 595 F.3d at 972; Nunez, 591 F.3d at 1227; Michenfelder, 860 F.2d at 332.

In evaluating whether a prison's policy or practice is reasonable under the Fourth Amendment, courts must also look to the test articulated in Turner v. Safley, 482 U.S. 78,

4

89-91 (1987).  Under Turner as applied to Fourth Amendment body search claim, any infringement on a prisoner's Fourth Amendment rights must be reasonably related to legitimate penological interests; this requires consideration of: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) the impact the accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (3) the absence of ready alternatives.  Bull, 595 F.3d at 973; Nunez, 591 F.3d at 1227; Michenfelder, 860 F.2d at 331.

The Court is mindful that it is evaluating Plaintiff's Second Amended claim at the pleading stage.  Nevertheless, Plaintiff's allegations must be sufficient to state a facially plausible Fourth Amendment claim, with any alleged infringement being "evaluated in the light of the central objective of prison administration, safeguarding institutional security." Bull, 595 F.3d at 972 (quoting Bell, 441 U.S. at 547).  "[T]he problems that arise in the day-to-day operation of a correctional facility are not susceptible of easy solutions," and prison officials must be accorded "'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"  Bull, 595 F.3d at 972 (quoting Bell, 441 U.S. at 547).

Specifically, for a digital body cavity search of an inmate to be constitutional, three requirements must be met.  See generally Bell, 441 U.S. at 559.  First, there must be reasonable suspicion to believe that the person searched is concealing contraband. Vaughan v. Ricketts, 950 F.2d 1464, 1469 (9th Cir. 1991).  Second, there must also be a valid penological need for the search.  Tribble v. Gardner, 860 F.2d 321, 325 (9th Cir.

5

1988).  Third, the search must be conducted in a reasonable manner.  This requires considering whether the search was performed in private by trained personnel under hygienic conditions.  <u>Vaughan v. Ricketts</u>, 859 F.2d 736, 741 (9th Cir. 1988) overruled on other grounds by <u>Koch v. Ricketts</u>, 68 F.3d 1191 (9th Cir. 1995).

Plaintiff states that she was strip searched and then subjected to a digital body cavity search while she was handcuffed.  She states that the searches were conducted after she was accused of having drugs.  The strip search occurred in an inmate restroom.  The body cavity search was conducted by medical staff and occurred in an examination room in the prison hospital.

As pleaded, Defendants had a reasonable justification for conducting the searches, namely a suspicion that Plaintiff possessed drugs.  Removing drugs from prison is a valid penological goal. The searches were conducted in a reasonable way, i.e. in rooms with some privacy and by appropriate personnel.  Thus, Plaintiff's Second Amended Complaint fails to state a claim for a Fourth Amendment violation.

Plaintiff was previously notified of the relevant legal standard.  However, the Court's prior explanation was brief and not well explained.  Thus, while her Second Amended Complaint contains no allegations that are materially different than those contained in her first two complaints, the Court will give Plaintiff one last chance to amend her complaint.  Plaintiff should refer to the legal standard set forth above and use that standard to expand on her allegations in an attempt to state a claim upon which relief could be granted.

**B.     Eighth Amendment Claims**

Plaintiff appears to be making an allegation that she was subjected to cruel and unusual punishment in violation of the Eighth Amendment.

6

"[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A plaintiff who claims that the conditions of his confinement fall below the constitutional standard must make two showings. "First, the plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious' to form the basis for an Eighth Amendment violation." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (citation omitted). "The Constitution . . . 'does not mandate comfortable prisons, and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991) (citations omitted). Second, the prisoner must make a "subjective" showing that prison officials "acted with the requisite culpable intent such that the infliction of pain is 'unnecessary and wanton.' In prison conditions cases, prison officials act with the requisite culpable intent when they act with deliberate indifference to the inmate's suffering." Anderson v. County of Kern, 45 F.3d 1310, 1312 (9th Cir. 1995).

As stated above, Plaintiff states that she was strip searched and that a body cavity search was performed. Such allegations do not in and of themselves describe extreme deprivation or that officials knew of and disregarded some substantial risk of harm to Plaintiff sufficient to sustain a claim for violation of her Eighth Amendment rights. In fact, as stated above, Defendants appeared to have acted reasonably in light of the drug allegation against Plaintiff. Thus, the Court finds that Plaintiff fails to state a cognizable Eighth Amendment claim. The Court will, however, grant her leave to amend.

**C.     Additional Legal Standards**

While not perfectly clear from the existing pleading, it appears Plaintiff indtends also to allege retaliation and use of excessive force. She states that Defendant S. Dickinson retaliated against her, and that she was "roughed up" while being escorted to the prison hospital. Following are legal standards relevant to such claims that Plaintiff should consult if she chooses to pursue these claims in her amended complaint.

      1.     Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

The second element of a prisoner retaliation claim focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Morgan, 874 F.2d at 1314). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent").

With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity . . . ." Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999). The correct inquiry is to determine whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300).

### 2. Excessive Force

The analysis of an excessive force claim brought pursuant to Section 1983 begins with "identifying the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Connor, 490 U.S. 386, 394 (1989). The Eighth Amendment's prohibition on cruel and unusual punishment applies to incarcerated individuals, such as Plaintiff here. Whitley v. Albers, 475 U.S. 312, 318 (1976). To state an Eighth Amendment claim, a plaintiff must allege that the use of force was "unnecessary and wanton infliction of pain." Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Hudson v. McMillian, 503 U.S. 1, 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

Whether force used by prison officials was excessive is determined by inquiring if the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7. The Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. See Whitley, 475 U.S. at 321. The absence of significant injury alone is not dispositive of a claim of excessive force. See Wilkens v. Gaddy, 130 S.Ct. 1175, 1176-77 (2010). "Neither accident nor negligence constitutes cruel and unusual punishment, as '[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause.'" Williams v. Ramirez, 2009 WL 1327515, *3 (E.D.Cal. May 12, 2009) (quoting Whitley, 475 U.S. at 319).

### D.    Personal Participation by Defendants

Plaintiff fails to allege that Defendant S. Dickinson personally participated in the deprivation of her rights.

Under Section 1983, Plaintiff must demonstrate that each named Defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). The Supreme Court has emphasized that the term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer. Iqbal, 129 S.Ct. at 1949. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Id. at 1948. Rather, each government official, regardless of his or her title, is only liable for

his or her own misconduct, and therefore, Plaintiff must demonstrate that each Defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Id. at 1948-49.

When examining the issue of supervisor liability, it is clear that the supervisors are not subject to vicarious liability, but are liable only for their own conduct. Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir. 2001); Wesley v. Davis, 333 F.Supp.2d 888, 892 (C.D. Cal. 2004). In order to establish liability against a supervisor, a plaintiff must allege facts demonstrating (1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Jeffers, 267 F.3d at 915; Wesley, 333 F.Supp.2d at 892. The sufficient causal connection may be shown by evidence that the supervisor implemented a policy so deficient that the policy itself is a repudiation of constitutional rights. Wesley, 333 F.Supp.2d at 892 (internal quotations omitted). However, an individual's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement. Id. (internal quotations omitted).

Supervisor liability under section 1983 is a form of direct liability. Munoz v. Kolender, 208 F.Supp.2d 1125, 1149 (S.D.Cal. 2002). Under direct liability, Plaintiff must show that each particular defendant breached a duty to him and that such breach was the proximate cause of his injury. Id. "'The requisite causal connection can be established . . . by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" Id. (quoting Johnson v. Duffy, 588 F.2d 740, 743-744 (9th Cir. 1978)).

The Court will grant Plaintiff leave to amend this claim and attempt to set forth

11

sufficient facts to state a claim against S. Dickinson.

## V. CONCLUSION

The Court finds that Plaintiff's Second Amended Complaint fails to state any Section 1983 claims upon which relief may be granted. The Court will provide Plaintiff time to file an amended complaint to address the potentially correctable deficiencies noted above. See Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). In her Amended Complaint, Plaintiff must demonstrate that the alleged incident or incidents resulted in a deprivation of her constitutional rights. Iqbal, 129 S.Ct. at 1948-49. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Plaintiff must also demonstrate that each defendant personally participated in the deprivation of his rights. Jones, 297 F.3d at 934.

Plaintiff should note that although she has been given the opportunity to amend, it is not for the purposes of adding allegations unrelated to the above-discussed events. Plaintiff should focus the amended complaint on claims and defendants discussed herein.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Third Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed for failure to state a claim, with leave to file an amended complaint within thirty (30) days from the date of service of this order;

2. Plaintiff shall caption the amended complaint "Third Amended Complaint" and refer to the case number 1:08-cv-375-AWI-MJS (PC); and

3. If Plaintiff fails to comply with this order, this action will be dismissed for failure to state a claim upon which relief may be granted.

IT IS SO ORDERED.

Dated:   January 19, 2011              /s/ *Michael J. Seng*
                                       UNITED STATES MAGISTRATE JUDGE